Good morning. May it please the Court, my name is Rebecca Smith and I represent the Appellant Alliance for the Wild Rockies. I would like to save three minutes for rebuttal. I would like to start today by addressing the issue that we raised in the supplemental briefing, which was the District Court's opinion that was just issued this month in Alliance for the Wild Rockies v. Probert. Because the District Court has now held that the agencies must reinitiate ESA consultation on the governing forest plan access amendments, that triggers some other legal repercussions, namely under Pacific Rivers Council v. Thomas and Lane County Audubon v. Jameson, a timber sale cannot go forward while the pending. Is it correct, it appeared that the District Court limited its ruling to compliance in the Boers area, is that correct? Yes, Your Honor, the District Court found that the original 60-day notice to the agencies didn't adequately raise the issue as to the recovery zone, whether there were ineffective road closures in the recovery zone, and that the 60-day notice focused on whether there were ineffective closures in the Boers, and so the District Court interpreted that so that the reinitiation of consultation claim was only about the Boers, and he proceeded to address the various ways that reinitiation of consultation was required based solely on looking at the Boers under 40216 A, B, and C. So with respect to the the tiering from two actions in the recovery zone, is that affected or not? Yes, Your Honor, and that's why we also just filed another 28-J letter just this week, because we found a case that was directly on point, that was the Oregon Natural Desert Association v. Tidwell 716 FEDSEP II at 1006. What that court held was that even if they found that only a portion of the project area violated the on the entire agency action, and so in that case there was only several grazing allotments that violated the incidental take permit, but the whole entire agency action was 13 grazing allotments, and so the District Court held that because we have to look at the effects of the entire agency action, because this court said that in Conner v. Burford, a biological opinion has to be co-extensive with the agency action, that meant in that case, specifically, even though there were 13 grazing allotments, because the entire agency action was 13 grazing allotments, the agencies had to reinitiate consultation on all 13, because that was the entire agency action. And there are other district courts that reach a similar position, and basically the underlying thinking there is, the agency itself defined the action, it analyzed the effects of that action in its entirety, and to then only require reinitiation on small portions of it would basically allow the agency to cut up the action into smaller portions, none of which would ever violate the ESA's protection against causing jeopardy. And so that's in Conner v. Burford, that's in the Oregon Natural Desert Association case. It's also in the Endangered Species Act regulations, both the new regulations and the old regulations, they define, so a biological opinion has to address the effects of the action, and so then that begs the question, what does effects of the action mean? And so in both the old Endangered Species Act regulations that were in place prior to mid-September of this year, and the new regulations, effects of the actions include all interrelated effects, which means not just this one portion that we're talking about, but everything that is interrelated in the project. The new ESA regulations specifically say at 50 CFR 40202, that that includes areas that might be outside this immediate area. The district court didn't go that far, but you're saying that's required by these, by an interpretation of the ESA and what Okay, so the deficiency that the district court identified with ESA compliance was specific to the bores, it was something about linear miles and insufficient monitoring, and the same issues don't occur in the recovery zone, which is looking at density of use and has all these different monitoring requirements. So we don't know at this point whether the reinitiation is going to affect the entire access amendments or just those parts in the bores. Yes, Your Honor, and that brings up an important issue, which is the way that ESA section 7d applies, because ESA section 7d says while reinitiation of consultation is pending, you cannot take any action that is an irreversible or irretrievable commitment of resources, which this court has found timber sales are per se irretrievable. But getting to your question, we don't actually know what the reinitiation of consultation on the access amendment is going to look like, so we don't know what the reasonable and prudent measures are going to be as a result of that, and that's why many district courts who have looked at this have found you do have to enjoin all the timber sales. You can't just argue they're not going to be affected by these future reasonable and prudent measures, because we don't actually know what those reasonable and prudent measures are yet. What does this district court do in this decision three weeks ago? Ordered reinitiation of consultation on the access amendment, and ordered reinitiation of consultation on the site-specific project that was part of that case, and also ordered a supplemental EIS be prepared for that project. That's limited to the bores area. The district court was fairly clear. The district court held that our claim was limited to the bores because the 60-day is limited to the bores area. It was, it was pretty much this is a bores case. And the problem is... And the sense I get out of this is that you want us to respond to the district court's order, but to effectively expand it, and there's some tension there. Yes, and the reason we weren't, we couldn't raise these same arguments regarding remedy to the district court is because the site-specific project in that case was encompassed entirely in the bores, and so this issue of, yes, the claim was the bores, but if you order reinitiation of consultation, does that apply to the access amendment as a whole? It didn't actually come up in that case because the site-specific project was entirely within that bores area. And I do understand that this is a lot of information and detailed facts that came sort of in the last minute. That seems to be the theme of this morning. The cases have all changed. I felt a lot better after watching the last argument, because I don't feel like... You've reached a settlement, right, in this case? So, the order before us is the district court's dissolution of a permanent injunction, and based on the information that was before, the district court was that the access amendments were in place, and that the environmental, the ESA compliance had teared off of that. So, what do we do about the fact that the case before the district court, and the case before us, doesn't include this new ruling by the district court, which potentially could be appealed as well? Your Honor, I do want to look right at that dissolution order, because it's important, and I'm looking now in the record at ER... Well, it starts at ER 8, but specifically ER 10 through 13. So, the district court's dissolution order in this case was issued about a year ago, and so it was before the district court had before it the evidence of unpermitted incidental intake that it just decided this month. And so, I want to look at ER 10 through 13. You are correct that in the dissolution order, the district court specifically said that there was a relationship between the access amendments and the Miller- and the district court held that there is no evidence in the record, and Alliance concedes... This is at ER 8. The administrative record shows, and Alliance does not dispute, that the Miller Project complies with the conditions of the access amendment incidental take permit. And so, then the court went on to say, because the agencies are complying with the incidental take statement from the access amendment, and this project tiers to that, that therefore this project is lawful. And the court said, quote, whether subsequent agency action adversely affects grizzly bears is measured against those baseline conditions in the access amendment incidental take statement. And so, the decision in this case was premised upon an assumption that they were complying with the incidental take statement. So, why isn't the correct approach to say this new information that was before the district court, wasn't before the district court at the time of its opinion? And we normally do not look at new evidence on appeal. And if things have changed, then it's up to the plaintiff to go back to district court and request additional consideration. Yes, Your Honor, and we do believe that that would be an appropriate result in this case, if this court were to remand to the district court for reconsideration. There's a number of cases where, when there's an intervening change, significant change in facts or law in the pendency of the appeal, this court remands to the district court for reconsideration. And because it is the same district court judge, I feel like that's even more appropriate in this case. Okay, Your Honor, so... And I understand that position, and I'm sure we'll be directing some questions on this to the government's counsel. But if our view was, we don't wanna consider this at all, because it wasn't before the district court. Are your clients prejudiced? I mean, are your clients able to simply file a new action based on this new information that was not available to the district court when it dissolved the prior injunction? We would certainly try to do that, Your Honor, if the court ruled that way. I have no idea how the district court would react to that, but we could certainly try to do that. The recent decision has a civil number starting with 18, so I presume it was a recent filing. Is there something else that would preclude, based on subsequent events, preclude your client or anybody else from filing a new action? The only thing that's complicating in this case is whether there would be a res judicata issue, because the original claim in this case about this particular area was that there was no incidental take statement for this particular area. And so, our original claim in summary judgment was that the agencies needed to... That there was illegal, unpermitted take because of the high road densities, and that they needed an incidental take statement. And so, in a way, we did raise that same claim already in this case, and so to try and file a new complaint raising the exact same claim might... Well, the district court said that the Forest Service didn't need to have an additional incidental take statement because it was covered by the one for the access amendments. In the original summary... So, there was two orders. The original summary judgment order, where the district court did grant us an injunction on that claim and found that the agencies did need to prepare an incidental take statement because of the high level of unpermitted incidental take. Then on remand... And then the access amendments were... Yes. And they incorporated... Educated and initiated. Yes. And so, on remand, the agencies prepared an incidental take statement. And then in the dissolution order, the district court said, okay, they did what you wanted. And now, a year later, it turns out they're actually violating that incidental take statement. So, we sort of have come back to square one, where again, we have illegal, unpermitted take that's undisputed and no incidental take statement. And could I reserve the rest of my time for a rebuttal? Yes. Thank you. Good morning, and may it please the court. I'm Summer Ingalls here for the United States, and we ask the court to affirm. Before I turn to the issues raised by Judge Malloy's recent opinion, I'd like to remind the court that the Miller West Project was designed to improve grizzly bear habitat, to create new foraging opportunities, to reduce the risk of particularly severe wildfires, and to create a more secure habitat for the bears. The arguments we've raised in our merits brief remain true today, and Judge Malloy's opinion is not something that the court needs to be concerned about at this time. Ultimately, it raises new issues, new facts that should be brought in a new proceeding in the district court. In fact... Is there a limitation to the ability to bring a new proceeding? Not that I'm aware of, Your Honor. I haven't studied the res judicata issue. I know that Alliance has already provided the Forest Service with a 60 day notice of intent to sue, arguing that a number of projects, including the Miller West Project, should be stopped while reinitiation of consultation proceeds. So counsel, how would the United States be prejudiced if instead... Let's say, but for this new information, we would have been inclined to affirm. How would the United States be prejudiced if instead of doing that, we remanded for the court to... The district court to have the ability to reconsider whether these new facts would affect its decision? How would that prejudice the United States if we simply affirm the plaintiff could bring this in a completely new action? It would depend on what the court orders in terms of operations on the ground. If the project were allowed to proceed, I imagine that the district court could address these issues with little prejudice to the government. Our primary concern at this time is that the project be allowed to proceed because the harvesting activities that are planned for this December are limited in time. The project includes limitations that prevent the Forest Service from conducting harvesting activities in grizzly bear core habitat during the bear years. So am I... I'm sorry. So am I hearing you correctly that if we ourselves did not grant plaintiff some of the relief it seeks on appeal, that is reverse, reinstate the injunction if we didn't order any injunctive relief, but merely remanded for the to, that that wouldn't prejudice the government materially? At this time, I don't think it would, although it's an issue that I would be happy to submit supplemental briefing on. Our primary concern, as I've explained, is that the project be allowed to proceed. So the project is proceeding based on ESA compliance, based on the access incidental take statement, which the district court has now said the compliance is questionable, at least in the Boers area. What do we do about that? That's correct. The government has submitted a declaration explaining that it has stopped activities in the Boers area for this project. Can we consider that as an extra record document, basically a new fact? Can we even consider that? What would be the basis for that? We believe it's something that we can submit. First, it was submitted under penalty of perjury. It's extra record evidence to be sure. We're not providing it to provide additional support for the agency's decision, but rather to explain what's happening on the ground. And the court's able to consider this type of information when evaluating a remedy, or in this case, the scope of the decision. We provided the declaration to provide support to explain what is happening, and we wanted to provide an official document from the forest supervisor to say what was happening. Ultimately, the district court's decision, Judge Molloy's most recent decision, was limited specifically to the Boers area. The opposing counsel says, although it was limited to the Boers area, by force of law, the Forest Service will have to reinitiate consultation on the entire access amendment, since it's a single agency action. What's your response to that? That's something that the Forest Service needs to evaluate on its own. The district court's decision was specifically limited to the Boers areas, and if the Forest Service determines that in the course of evaluating take in the Boers areas, it should also look at the BMUs or the recovery zone, that's a decision for the agency to make. But at this time, the agency, the Forest Service, the Fish and Wildlife Service, the expert agencies responsible for managing grizzly bear habitat and grizzly bear as a species, they've decided that the Boers areas and the recovery zone should be treated and managed differently. So if we did remand, as Judge Bennett was suggesting, I guess the declaration could be considered by the district court for, in connection with the scope of whatever relief it would give. That's correct. What's the status of... I don't know how to call it, because it's Probert, and you're telling us this case is now called Probert. So as I say, the District of Montana case, recently adjudicated, is that on appeal? Has there been any attempt to obtain a stay order from our court? Is anything going on there? That's a decision that the government is currently evaluating whether to appeal. It's not a case where we've filed a stay at this time or have filed a notice of appeal. I understand if we give any consideration to the declaration that timber harvesting is a month away. So clock's ticking, and I'm struggling to figure out how best to let somebody who's in a position to consider the things that have been made available to us very recently, consider it somewhat more coherent or comprehensive fashion. And practically speaking, what do you think is the best way to accomplish that? Well, two things. First, the activities that are scheduled to start in December are going to be occurring while grizzly bears are hibernating, and therefore a lot of the concerns that Judge Molloy identified in his opinion, specific to grizzly bear effects from road use, are simply not in play. The grizzly bears will be hibernating, and the Fish and Wildlife Service has explained in the record, page ER 277, that when activities occur during the winter, those activities will not harm the grizzly bears. I think there is time to evaluate what should happen here, but again, I reiterate that Judge Molloy's opinion was limited to the boars, and the activities that are scheduled to start this December are in the recovery zone only. And therefore, a number of the concerns that he raised simply don't apply with any force to the areas that will be treated in the near future. The other point is that activities in the recovery zone, the recovery zone itself is managed for grizzly bear health and habitat. It includes large blocks of core habitat that are separate from roads, where no road use will occur while bears are active. In the two bear management units, or BMUs, where the project will take place, there are four large blocks of grizzly bear core habitat, that's secure habitat, that are each greater than 10,000 acres. In BMU 6, there's a core habitat area that's 27,000 acres. And the Fish and Wildlife Service has determined, in its review of this particular project, that the existence of those core areas, combined with the timing limitations on project activities, ensure that effects to grizzly bears from implementation of the Miller Project simply won't be adverse. But that's a combination that relies on the biological opinion and takes statement for the access amendments, right? And then they also, they looked at the Miller Project and said, no additional, no incremental adverse effect. But you don't get there unless you have the incidental take statement from the access amendments. Isn't that right? That's correct. Although the incidental take statement for the access amendments provided different standards for the BMUs and the boars. Right. And so the fact that Judge Molloy determined that the standards for the boars had been exceeded doesn't call into question the parts of the agencies here have evaluated how the Miller Project will affect the density, road density standards in the BMUs, and has determined that they are consistent with the incidental take statement for the access amendments, which was in no way called into question by Judge Molloy's recent order. So, pending opposing counsel or the government's evaluation of whether re-initiation had to take place on the access amendments as a whole, could we remand in part, just remand the component relating to boars to the district court? Or does it have to be, both have to go together? I think it could be remanded specifically for the boars. And the fact that I realize the court's concerned about reliance on the declaration. I can tell you that the Forest Service has stopped activities there. It's information that could be provided to the district court. And that would be a way to ensure that those issues don't raise any specific concerns and can be evaluated by the district court. I'd also underscore again that Alliance has an opportunity to raise these concerns before the district court in the suit that is told the Forest Service that it intends to file. So, there are a variety of ways that Alliance can have its concerns heard. Did they file the notice? They filed it on October 3rd with the Forest Service. There are opportunities for Alliance to air its concerns, but those concerns do not need to be evaluated by this court today. If I could, I'd like to turn briefly to the NEPA issues. Alliance has argued that the Forest Service failed to consider how the Miller Project would that the Forest Service failed to consider in its NEPA analysis. Here, the district court properly held that the Forest Service's cumulative impacts analysis was adequate. NEPA imposes a rule of reason. Agencies are not required to catalog events that are not significant to the action in question. And here, the Forest Service explained that at ER 234, the Miller Project will not create a significant departure from past human use patterns or create an obvious source of conflict between people and bears. It explained at page 256 that in the Boers areas, the project in combination with baseline conditions and reasonably foreseeable projects does not change baseline conditions. And similar statements are made at ER 255 and ER 494. Ultimately, the Miller West Project is designed to decrease road use in the project area. And no permanent roads will be constructed. There will be 3.9 miles of temporary roads. That will be 12 spur roads. But those roads will be obliterated once the project is complete. And while they're in use during the project, the project contractor will monitor the roads to ensure that they will not be used by the unauthorized way part. I confess, I'm adrift a little bit, so I may have missed something. But can you help me understand to what extent unauthorized use is factored in? I mean, at some point, the agency knows that there is unauthorized use. Perhaps there's a higher level even than had been anticipated. Is that baked in somehow? The Forest Service in the SEIS at page ER 237 cites to the monitoring reports it prepares on a yearly basis and submits to the Fish and Wildlife Service, explaining changes within each bearer management unit, identifying breaches where they occurred, and explaining how the Forest Service corrected those breaches and, if appropriate, will continue to monitor illegal use in those areas. So those are part of the record. The Forest Service has explained, though, on that same page, that ultimately road densities in the area haven't changed markedly from year to year. The Forest Service is well aware that breaches take place and that's why it submits, in part, why it submits these yearly reports to the Fish and Wildlife Service. But it is also determined in this particular case that the project being analyzed in its NEPA documents will not change that existing status. There will be no permanent roads constructed. There will be no harvesting in the spring. So in the probate decision, the district court sent it back for additional NEPA analysis saying that the analysis was limited by the assumption that road closures would be effective. Is that similar analysis relevant to the Miller Project? We disagree. Part of the concern in probate was also that the agency didn't have a robust monitoring program in place and therefore wasn't able to fully evaluate the scope and nature of illegal use. Here, the access amendments require that the Forest Service monitor at least 30% of all closures every year. And the record shows that the agency monitors much closer to 50% of these closures and therefore is well aware about the extent of illegal use and there are more robust protections in these areas to ensure that that illegal use won't affect barriers. Is that the difference between the Boers area and the recovery zone or is that specific to the Miller Project? That's the difference between the Boers area and the recovery zone. Because the recovery zone is managed specifically for bears, there are much more specific and intense protections in place. I see that my time is running short. Unless the court has further questions, we ask the court to affirm. Thank you very much. Thank you for your argument. Your Honor, I just have a few quick points. First, the DOJ did say that there would be no prejudice to the government from a remand. Also, they indicated that they had not yet decided whether to reinitiate consultation and address the entire access amendment, the entire agency action, which the underlying statement there is that they could decide to do that. And that's precisely the circumstance when the concerns of ESA Section 7D come into play, because if they ultimately agree to create greater protections, for example, if they say the Boers areas are really degraded, so our reasonable and prudent measure is to create greater protections in the recovery zone, at this point, they can still do that on reinitiation of consultation. However, if this timber sale goes forward, that would be foreclosing that as a reasonable and prudent alternative. And that is why we are saying that the entire agency action is what we need to look at here. And they did not say that they would not be reinitiating consultation and addressing the entire access amendment, just that they haven't decided yet. Also, there has been no appeal and no in Probert. And then finally... But the time hasn't run for that, right? That's correct, Your Honor. The road closures are regularly violated in both the recovery zone and the Boers area. We only need to look at the most recent monitoring report in 2018, which found, I believe, 30 violations in both the recovery zone and Boers together. So all of those are in your motion for us to take judicial notice, but that's all extra record material, right? That is not really before us at this point. That is true, Your Honor. And I only wanted to bring it up to rebut the sort of assumption that these things aren't occurring in the recovery zone. There are just as many violations happening just as often in the recovery zone as in the Boers. And the fact that they monitor one-third of the recovery zone doesn't stop these violations from occurring. And we have, in our statement of facts, in our brief, outlaid a number of these violations that so I just wanted to be clear that this is a substantive issue that affects the recovery zone and the Boers. And the only reason the district court limited the opinion to the Boers and Probert was because of a defective ESA-60 notice. And thank you, Your Honor. Okay. We thank both sides for their argument. The case of Alliance for the Wild Rockies versus Christopher Savage is submitted, and we are adjourned for this session and for the week. Thank you.
judges: Clifton, Ikuta, Bennett